FREDERICK F. FAHLBUSCH, Plaintiff, *v.* CONSUMERS DISCOUNT CORPORATION, SAMUEL BENSON, CHARLES L. MARTEL and MOTOR CREDIT CORPORATION, Defendants.

Municipal Court of New York, Borough of Queens, Fourth District, May 25, 1936.

*Lazarus A. Pincus,* for the plaintiff.

*Mintzer & Todarelli,* for Consumers Discount Corporation.

*Morris Okoshken,* for Samuel Benson.

*Harold L. Kunstler,* for Charles L. Martel and Motor Credit Corporation.

O'ROURKE, J. This is an action in replevin and for the recovery of damages for the alleged unlawful detention of an automobile. From the somewhat lengthy testimony and voluminous exhibits, I have found the following salient facts, which present a novel question of law in this State.

On January 11, 1935, one Harry Weiss purchased an automobile and executed and delivered a chattel mortgage and promissory note, *in duplicate,* to the Long Island Discount Corporation in the sum of $720. On the same day one set of these chattel mortgages and promissory notes was assigned to defendant Motor Credit Corporation, which in turn assigned same to the Commercial Banking Corporation on January 13, 1935, and which assignment was never filed. Charles L. Martel, president and sole stockholder of Long Island Discount Corporation and of Motor Credit Corporation, retained the other set of duplicate chattel mortgages and notes, which he caused to be filed on January 22, 1935, in the register's office of Kings county. This filed duplicate set did not recite the assignment of the original mortgage and note to the Commercial Banking Corporation.

Thereafter Weiss defaulted on some payments under the terms of the chattel mortgage, and on July 3, 1935, the automobile was seized by Vincent Martin, an employee or agent of Charles L. Martel, who sold it under instructions to defendant Samuel Benson, doing business as the Queens Auto Clearing House, for $450. Charles L. Martel received a check to his personal order. At the time of the sale, Benson received the duplicate original chattel mortgage, the executed satisfaction thereof by the Motor Credit Corporation, a bill of sale, and physical possession of the automobile. Prior to the completion of the sale, Benson had caused search to be made in the register's office which disclosed the fact that the chattel mortgage was held by Motor Credit Corporation, last assignee of record.

On July 15, 1935, Benson sold the automobile to plaintiff for $675. On October 13, 1935, this automobile was taken from plaintiff by defendant Consumers Discount Corporation. It appears that prior to the purchase of the automobile by Samuel Benson,

Commercial Banking Corporation assigned the set of chattel mortgage and note which it held to Consumers Discount Corporation, and this assignment likewise was never filed. Thereafter, and on October 26, 1935, plaintiff instituted this action and also replevied the automobile after furnishing a surety company bond.

The testimony discloses that Charles L. Martel was the principal officer and sole stockholder of several finance companies which transacted a large business with the Commercial Banking Corporation for several years. On September 1, 1934, an agreement was entered into between defendant Motor Credit Corporation and Commercial Banking Corporation for the purchase by the latter corporation from Motor Credit Corporation of conditional sales contracts, chattel mortgages, notes and other commercial paper. Neither Benson nor the plaintiff were shown to have any knowledge of this agreement. It was also disclosed that, notstanding the aforementioned contract, there was a well-established course of dealing between Commercial Banking Corporation and Martel and his corporations. It appears that the practice was, in the event of default in payments by the purchaser of the automobile, for Martel to repossess and resell the car without requiring Commercial Banking Corporation to return the assigned chattel mortgage or note. Apparently, the procedure of procuring the execution of chattel mortgage and note in duplicate and delivering one set with the assignment and Martel retaining the other set, was to facilitate repossession and resale of cars by Martel, without loss of too much time because Commercial Banking Corporation was located in Philadelphia. As between themselves, Commercial Banking Corporation and Martel, and his corporations, this conduct in effect modified any other written agreement which provided the method of repossession and resale, the ultimate intention being that Martel account to Commercial Banking Corporation for the proceeds of a resale.

In my opinion the plaintiff acquired good title to the automobile from defendant Benson by reason of the fact that he purchased in good faith, for value, and without notice of any defect in the title to the chattel. At the time of the sale by Benson, plaintiff obtained physical possession of the car; the only chattel mortgage of record was in the name of Motor Credit Corporation, and a satisfaction piece duly executed by Motor Credit Corporation (last owner of record of said chattel mortgage) and the original note were delivered together with a bill of sale, *prima facie* valid, all of which was in accordance with the usual custom for the purchase and sale of automobiles. The proof before the court disclosed no collusion or any other element which should deprive

plaintiff from procuring and retaining possession of the automobile as against the world.

As a general rule, a vendor or pledgor can convey no greater right or title than he has. This is a truism applicable to a simple transfer from one party to another where no other element intervenes. It does not interfere with the well-established principle that where the true owner holds out another, or allows another to appear (as was Martel held out), as the owner of, or as having full power of disposition over property, and innocent third parties are misled into dealing with such apparent owner, an innocent purchaser, for value and without notice, will be protected.

This principle of law is well stated by the Court of Appeals in *Mc Neil* v. *Tenth National Bank* (46 N. Y. 325, at p. 329): " Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, *as against them*, the existence of the title or power which, through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance. (*Pickering* v. *Busk*, 15 East, 38; *Gregg* v. *Wells*, 10 Adol. & El. 90; *Saltus* v. *Everett*, 20 Wend. 268, 284; *Mowrey* v. *Walsh*, 8 Cow. 238; *Root* v. *French*, 13 Wend. 570.) "

The issue herein really centers upon the powers conferred upon Martel and his corporations by Commercial Banking Corporation in their course of dealing, which resulted in conferring upon Martel an apparent title to, or power of disposition over, the automobiles which were repossessed and which conduct thus estopped Commercial Banking Corporation and its assignee, defendant Consumers Discount Corporation, from asserting its title as against the plaintiff who was a *bona fide* purchaser for value, and without notice.

The simple act of intrusting possession of a chattel to another as a pledgee or bailee is insufficient to preclude the real owner from reclaiming his property, in the event of an unauthorized disposition thereof by the person so intrusted. (*Ballard* v. *Burgett*, 40 N. Y. 314.)

The situation herein is different, in that not merely the possession of the property, but also written evidence in the form of the duplicate original chattel mortgage and promissory note, were in the possession of Martel and the Motor Credit Corporation, coupled with the power of disposition by repossession and resale in the event of the mortgagor's default. The intention of Martel and Commercial Banking Corporation was clear. The duplicate set of chattel mortgage and promissory note was to be used by Martel

when the occasion arose, the original thereof being retained by Commercial Banking Corporation in Philadelphia as part of its permanent office records. If there were any conditions or restrictions upon which the ostensible right of control was to be exercised with respect to repossession and resale, the same were not expressed upon the face of these instruments, but remained in confidence between Commercial Banking Corporation and Martel and Martel's corporations, and of which plaintiff and Benson had no knowledge.

Where a party possesses all of the external indicia of title, and an apparently unlimited power of disposition over it, an innocent third party, for value and without notice, is not bound by the limitations imposed upon the agent by his principal. (*McNeil* v. *Tenth National Bank*, 46 N. Y. 325, at p. 333; *Commercial Bank of Buffalo* v. *Kortright*, 22 Wend. 348, 362.)

The principles of agency are applicable to this case. Martel in selling to Benson (the used car dealer) was bound to protect the interests of Commercial Banking Corporation and its assignee, the defendant Consumers Discount Corporation. The purpose of the apparent power of disposition of resale under the duplicate original chattel mortgage in Martel's possession was for summary and effective action under certain conditions.

Martel and his corporations were invested with the power voluntarily intrusted to them by Commercial Banking Corporation with the apparent ownership and right of disposal, not merely by the negligence of the true owner of the chattel mortgage, but by voluntary act of the Commercial Banking Corporation, and for the very purpose of attesting to the world full title and power, in case the contingency should arise in which it was necessary to repossess and resell a car because of a default in payment under the terms of the chattel mortgage.

The court, under the testimony elicited at the trial, must also consider the element of estoppel, founded upon the acts of Commercial Banking Corporation, which likewise affects the rights and remedies of its assignee, defendant Consumers Discount Corporation.

As between two persons equally innocent, a loss resulting from the fraudulent acts of another must rest upon him by whose act or omission the fraud was made possible. This rule operates only to protect those who, in dealing with others, exercise ordinary caution and prudence, and who deal in the ordinary way and in the usual course of business and upon the ordinary evidences of right and authority in those with whom they deal, and as against those who have voluntarily conferred upon others the usual evi-

dences or indicia of ownership of property, or an apparent authority to deal with and dispose thereof. In such cases, for obvious reasons, the law creates an estoppel, and, as against the true owner, the law declares that the apparent title which exists by his act, or omission to act, shall, as to persons acting and parting with value upon the faith of it, be deemed good and the holder thereof shall be regarded as the new, real owner. (*Barnard* v. *Campbell*, 55 N. Y. 456, 463.)

It is not every parting with possession of chattels, or documentary evidence of title, which will enable the possessor to deliver good title to one who may purchase from him. The owner must go farther, and do some act of a nature which will mislead third persons as to his true position. (*Pickering* v. *Busk*, 15 East, 38; *Ballard* v. *Burgett*, 40 N. Y. 314.)

The rule with respect to estoppel is stated in *Barnard* v. *Campbell* (*supra*, 463) as follows: " Two things must concur to create an estoppel by which an owner may be deprived of his property, by the act of a third person, without his assent, under the rule now considered. 1. The owner must clothe the person assuming to dispose of the property with the apparent title to, or authority to dispose of it; and 2. The person alleging the estoppel must have acted and parted with value upon the faith of such apparent ownership or authority, so that he will be the loser if the appearances to which he trusted are not real. In this respect it does not differ from other estoppels *in pais*. (*Weaver* v. *Barden*, 49 N. Y. 286; *McGoldrick* v. *Willits*, 52 id. 612; *City Bank* v. *R., W. & O. R. Co.*, 44 id. 136; *Saltus* v. *Everett*, 20 Wend. 267; *Wooster* v. *Sherwood*, 25 N. Y. 278; *Brower* v. *Peabody*, 3 Kern. [13 N. Y.] 121.) "

With regard to the rights of defendant Consumers Discount Corporation, it took subject to the equities which arose prior to the taking of its assignment of the chattel mortgage and promissory note from Commercial Banking Corporation, and the assignor can give no better title than it has. (*Davis* v. *Bechstein*, 69 N. Y. 440, 442; *Moore* v. *Metropolitan National Bank*, 55 id. 41; *Schafer* v. *Reilly*, 50 id. 61; *Ingraham* v. *Disborough*, 47 id. 421; *Reeves* v. *Kimball*, 40 id. 299; *Ballard* v. *Burgett*, Id. 314; *Bush* v. *Lathrop*, 22 id. 535.)

Sections 104 and 105 of the Personal Property Law are applicable to the facts herein. Section 104 provides: " Sale by person not the owner. 1. Subject to the provisions of this article, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.*" (Italics mine.)

Section 105 provides: " Sale by one having a voidable title. Where the seller of goods has a voidable title thereto, *but his title has not been avoided at the time of the sale*, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title." (Italics mine.)

Under the foregoing provisions, Martel and his Motor Credit Corporation had a voidable title, clothed with the power of disposition by Commercial Banking Corporation for the purposes of repossession and resale. The voidable title not having been avoided at the time of the sale to defendant Benson, he acquired good title to the automobile having bought in good faith, for value, and without notice of the defect in title. Similarly the foregoing sections protect plaintiff's position as a *bona fide* purchaser for value, and without notice of any defect of title. (*Neal, etc., Co.* v. *Tarby*, 99 Misc. 380; *Pennsylvania R. R. Co.* v. *Bank of United States*, 214 App. Div. 410; *Dows* v. *Kidder*, 84 N. Y. 121, 128; *Parker* v. *Baxter*, 86 id. 586, 591.)

Reference is made to section 106 of the Personal Property Law by the trial memoranda of law submitted to the court, but this section has no application to the facts. This section has reference to a situation where a person having sold goods, *continues in possession* of the goods, or of documents of title to the goods.

Section 106, by its very construction, is applicable only to the case where goods have *never* left the possession of the seller, whereas the facts herein clearly show a sale and delivery of the automobile to Weiss, and then the making of the finance mortgage papers to Long Island Discount Corporation, followed by the subsequent assignments to Motor Credit Corporation and then to Commercial Banking Corporation. The seller herein did not retain possession of the automobile in question.

I am unable to agree with the contention of the defendant Consumers Discount Corporation that its interests were protected by the original filing of the chattel mortgage to Motor Credit Corporation on January 22, 1935, which record, it is conceded, was bare of any recital of the assignment and transfer thereof from Motor Credit Corporation to Commercial Banking Corporation, assignor of defendant Consumers Discount Corporation.

Likewise, the citation of *General Credit Corporation* v. *Kapun* (237 App. Div. 694) is not in point. That is a case of an assignment of an *unfiled conditional sales contract*, purchased by a finance company from an automobile dealer who had made a fictitious sale to the dealer's mechanic. Several days later the dealer sold the same car (which had never left the dealer's possession) to defendant

Kapun. When payments were not made to the plaintiff finance company it located the car in defendant's possession, and effected a seizure. Defendant counterclaimed and asserted that his title was paramount and sought damages for the retention of his automobile by the finance company. The Appellate Division affirmed the trial court's judgment in favor of defendant, basing its decision in part on section 106 of the Personal Property Law, since the automobile had never left the possession of the dealer on the original sale to his mechanic, and also because of the finance company's failure to file the conditional sales agreement, even though it was not required to do so under the statute in so far as defendant Kapun was concerned.

That the defendant in this case, Charles L. Martel, and the Motor Credit Corporation willfully and contumaciously violated the terms of their agreement with Commercial Banking Corporation is evidenced by the testimony in this case. However, the plaintiff should not be made to suffer for the wrongful acts or misfeasance of Motor Credit Corporation or Charles L. Martel, nor is this action the proper one to afford relief to Commercial Banking Corporation or its assignee, Consumers Discount Corporation, under the circumstances.

Under the facts as presented in this case, the contention of Consumers Discount Corporation with respect to the unrecorded assignments to Commercial Banking Corporation and from said assignee to itself is without merit.

A search of the law and reported decisions fails to disclose an actual case directly deciding this issue. Recourse must be made by analogy to the Real Property Law and section 324 thereof provides that the recording of an assignment of a mortgage is not in itself notice of such assignment to the mortgagor so as to invalidate a payment by him to the mortgagee. If an assignee of a mortgage seeks to protect himself against *bona fide* payments by a mortgagor to the mortgagee, *he must notify the mortgagor of the assignment.* (*Van Keuren* v. *Corkins,* 66 N. Y. 77, affg. 4 Hun, 129; *Reed* v. *Marble,* 10 Paige, 409; *James* v. *Morey,* 2 Cow. 246; 14 Am. Dec. 475; *New York Life Ins., etc., Co.* v. *Smith,* 2 Barb. Ch. 82.) (See, also, *O'Callaghan* v. *Barrett,* 66 Hun, 633.) An assignee of a mortgage likewise takes subject to the equities existing between the original parties. (*Liebowitz* v. *Arrow Roofing Co.,* 259 N. Y. 391.) An assignment, if not recorded, is void as against a subsequent purchaser of the same mortgage, and also as against a subsequent purchaser of the mortgaged premises whose interests are affected by such assignment. (*Bacon* v. *Van Schoonhoven,* 87 N. Y. 446, affg. 19 Hun, 158; *Decker* v. *Boice,* 83 N. Y. 215, affg. 19 Hun, 152.) (See, also, *Westbrook* v. *Gleason,* 79 N. Y. 23, revg. 14 Hun, 245.)

The Real Property Law further provides that where the assignee of the mortgage seeks to file a satisfaction of the mortgage, his assignment must likewise be recorded.

Section 230 of the Lien Law provides for the filing of chattel mortgages or *conveyances* intended to operate as a mortgage of goods and chattels, in order to preserve the rights of the holder of the chattel mortgage.

In *Bacon* v. *Van Schoonhoven* (87 N. Y. 446, 450) the Court of Appeals provided the definition of an assignment: " The *assignments* of the Owen mortgage are also *conveyances* within the act."

In *Decker* v. *Boice* (83 N. Y. 215, 220) the Court of Appeals ruled: " An assignee of a mortgage is by the express terms of the Recording Act a purchaser, *and both the mortgage and the assignment, if in writing, are conveyances.* (1 Rev. Stat. 756, §§ 37, 38.) The term ' conveyance ' is defined by the thirty-eighth section to embrace every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned." (Italics mine.)

The purpose of the recording acts has been to protect *bona fide* purchasers for value and without notice. Although section 230 of the Lien Law does not specifically state that assignments of chattel mortgages must be filed, it is the opinion of this court that it was the intent of the Legislature in the enactment of article 10 and the various sections and subdivisions thereof, that assignments as well as the chattel mortgages themselves should be filed if the assignees wish to protect their interests as against innocent purchasers for value. Assignments and succession in interest are mentioned in sections 234, 235 and 238 of the Lien Law and should be read together with section 230. Moreover, section 238 of the Lien Law provides that if the chattel mortgage is to be discharged of record " the mortgagee, his *assignee* or legal representative, upon the request of the mortgagor or of any person interested in the mortgaged property, must sign and acknowledge a certificate setting forth such payment or satisfaction." (Italics mine.) To hold otherwise would render title to personal property in an unstable condition and the public would be made to suffer in innumerable cases. The filing of an assignment is a protection to creditors and to subsequent purchasers and mortgagees in good faith.

Plaintiff is entitled to recover of the defendant Consumers. Discount Corporation the sum of six dollars and sixty-five cents, heretofore paid by said plaintiff for storage charges to Consumers Discount Corporation while the automobile was held by Consumers Discount Corporation, plus ten dollars paid by plaintiff for a premium on the replevy bond furnished by him, plus thirty-five dollars

to be paid to plaintiff's attorney for the services rendered by him herein, plus twenty-five dollars to be paid to plaintiff for the loss of use of the automobile, making a total of seventy-six dollars and sixty-five cents.

The counterclaim of Consumers Discount Corporation is dismissed, on the merits, as against plaintiff Frederick F. Fahlbush and defendant Samuel Benson. Defendant Consumers Discount Corporation is entitled to recover on its counterclaim the sum of seventy-six dollars and sixty-five cents against defendants Charles L. Martel and Motor Credit Corporation.