**In the Matter of DUMONT–AIRPLANE & MARINE INSTRUMENTS, INC., and LeJohn Manufacturing Company, Debtors.**

United States District Court
S. D. New York.
March 23, 1962.

**512**

Webster, Sheffield, Fleischmann, Hitchcock & Chrystie, New York City (Frederick P. Haas, M. Holt Meyer, New York City, of counsel), for McGinnis Investment Corp.

Javits Trubin Sillocks Edelman & Purcell, New York City (John Trubin and Charles R. Bergoffen, New York City, of counsel), for trustee.

RYAN, Chief Judge.

This is a proceeding initiated by the Trustee of the debtors to determine whether the liability of LeJohn Manufacturing Company to McGinnis Investment Corporation should be classified as a "General Unsecured Claim" or as a "Secured Claim", as defined in the Plan of Reorganization of LeJohn approved by Judge Alexander Bicks on August 19, 1960.

The liability is in the amount of $13,689, and is evidenced by a promissory note of $11,700 dated July 21, 1955 and bearing 6% interest from its maturity date of January 1, 1956.

The classification of the debt hinges upon the effect given to a Chattel Deed of Trust, dated July 21, 1955, executed by LeJohn Manufacturing Company to secure the debt. The Chattel Deed was filed in the office of the County Clerk for Cabell County, West Virginia on July 25, 1955, and in the office of the Prothonotary of the Court of Common Pleas, Clearfield County, Pennsylvania, on July 10, 1958. Some time during the months of March, April, and May, 1958, the equipment secured by the Chattel Deed was moved from Huntington, West Virginia to Clearfield, Pennsylvania. On October 31, 1958, LeJohn filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., which petition was approved by this Court on the same date. Subsequently, a plan of reorganization was approved and confirmed by the Court, providing that secured creditors are to be paid in cash to the full extent of their respective security interests. General unsecured creditors will be paid out of the remaining cash and will not, in fact, be paid in full.

Pursuant to an order of the Court dated April 24, 1961, virtually all of the tangible assets of LeJohn were sold at public auction; the net proceeds from the sale of the equipment covered by the Chattel Deed exceeded the amount of the liability to McGinnis Investment Corporation.

It is conceded by counsel for McGinnis Investment Corporation that the filing of the Chattel Deed in Clearfield County was not accompanied by any filing with the Secretary of the Commonwealth of Pennsylvania.

The determinative issue before the Court is whether on October 31, 1958, the date that LeJohn filed a petition for reorganization under Chapter X of the Bankruptcy Act, the creditor had a valid security interest under state law. The Court finds that it did not.

■ There is no question that Pennsylvania law is controlling. Reconstruction Finance Corp. v. Weiner, 192 F.2d 760 (2d Cir. 1951), cert. denied 343 U. S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); In re Industrial Sapphire Mfg. Co., 182 F.2d 589 (3d Cir. 1950).

■ As a general rule, where a trust deed or a chattel mortgage is properly recorded in the state where it is made, as concededly was the case here with the West Virginia filing, the subsequent removal of the property which is the subject of the deed to another state with (or without) the consent of the mortgagee, where such removal was not contemplated in the original transaction, will not affect the validity of the deed or mortgage, even though not recorded in the second state, unless re-recording is expressly required by the law of the second state. Collier on Bankruptcy, 14th ed., § 70.81. Under Pennsylvania law validity, or perfection, of a security interest on property subject to a valid security interest in another state does not continue beyond a four month period after the property is brought into Pennsylvania, unless within the four months the security interest in the property is again perfected in Pennsylvania. Pa.

Stat.Ann. Purdon (1954) Title 12A, § 9–103(3) which reads, in part, as follows:

" * * * If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state."

Since the LeJohn equipment was brought into Pennsylvania not later than May 31, 1958, the valid West Virginia recording of the Chattel Deed was effective in Pennsylvania until, but not after, October 1, 1958, unless the refiling was perfected in Pennsylvania. Perfection in the latter state can only be accomplished by compliance with the statutory provisions for filing. Title 12A Purdon's Statutes, § 9–302. The applicable state statutes provide for the places of filing as follows:

"(1) If filing is required * * * in order to perfect a security interest, the place of filing is as follows:

"(a) When the collateral is * * equipment other than equipment used in farming operations, then in the office of the Secretary of Commonwealth and in addition if all of the debtor's place [sic] of business are in a single county, in the office of the prothonotary of that county;

* * * " Title 12A Purdon's Statutes, § 9–401.

The Chattel Deed here in question was never recorded in the office of the Secretary of the Commonwealth. The clear purport of the wording of the statute indicates that this was a primary requirement. The failure to comply therein was a substantial and fatal defect which destroyed creditor's secured position before the Chapter X proceedings were initiated. See In the Matter of Luckenbill, 156 F.Supp. 129 (E.D. Pa.1957), holding that a creditor's security interest in equipment was unperfected under Pennsylvania law at a time when the creditor had filed with a county prothonotary, but not with the Secretary of the Commonwealth.

The creditor maintains that its failure to properly file its Chattel Deed should be considered a harmless irregularity. The Court need not here speculate as to the reasons for the Pennsylvania filing requirement with respect to the Office of the Secretary of State, but the advantages of a central filing office for the state seem obvious. See Uniform Commercial Code Comment No. 1 to Section 9–401 enacted by Pennsylvania, Title 12A Purdon's Statutes, § 9–401.

That the trustee has presented no evidence to show that any particular party was harmed or misled by the imperfect filing is of no consequence. See Matter of Luckenbill, supra.

Moreover, under Section 70, sub. c of the Bankruptcy Act the Trustee "as to all property * * * upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings [is] deemed vested as of [the date when said petition was filed] with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists." 11 U.S.C.A. § 110, sub. c.

Thus the claim of the creditor must be classified as unsecured; and it is so ordered.